BRADLEY PULVERIZER CO. v. BOWKER FERTILIZER CO. et al.

(Circuit Court, D. Massachusetts. November 4, 1901.)

No. 902.

1. PATENTS—INFRINGEMENT—MILLS FOR PULVERIZING ORES.

In the Griffin patent, No. 410,757, for improvements in mills for pulverizing ores, claims 13, 14, and 15, which relate to devices for discharging the ground material from the mill, if valid, are limited to substantially the combination of devices described in the specification, and are therefore not infringed by a mill in which stirrers on the bottoms of the rolls are used instead of the elevating inclines or shoes described in the patent, to project the pulverized material towards the openings.

2. SAME.

The Griffin patent, No. 515,673, for improvements in mills for pulverizing ores, claim 5, the important element in which is the use of stirrers on the bottoms of the rolls to effect the agitation and elevation of the ground material, must be limited, in view of the prior patents granted to the same inventors for mills having similar stirrers, to their use in connection with the particular form of driving mechanism described in the specification. As so limited, held not infringed.

In Equity. Suit for infringement of patents. On final hearing.

Fish, Richardson & Storrow, for complainant.
Hoke Smith and Edward P. Payson, for defendants.

COLT, Circuit Judge. The two Griffin patents on which this suit is brought are for improvements in mills for pulverizing ores. The mills belong to what is known as the "centrifugal type," in which the ores are ground by suspended rollers held in contact with an annular die by centrifugal force. Patent No. 410,757 was issued September 10, 1889, to E. C. Griffin, and patent No. 515,673 was issued February 27, 1894, to J. K. and E. C. Griffin. Only claims 13, 14,

and 15 of patent No. 410,757 are in issue. These claims relate to devices for discharging the ground material from the mill, and the important elements are the two-part casing having an annular passage or opening, and the elevating devices adapted to project the material towards the screened openings. Only claim 5 of patent No. 515,673 is in controversy. The important element in this claim is the use of stirrers upon the bottoms of the rolls to effect the agitation and elevation of the material in the pan. In defendants' mill are found a two-part casing having an annular passage, and stirrers upon the bottoms of the rolls, and therefore it is contended that the above claims of both the patents are infringed.

The first patent, No. 410,757, is for improvements on a prior Griffin mill patented October 19, 1886. These improvements are classified under six heads. The claims in issue come under the fourth head, which relates to the parts for grinding, screening, and discharging the material. As the claims are nearly identical, it is only necessary to refer specifically to the thirteenth:

"In a pulverizing mill, the combination of a stationary two-part casing or pan having an annular passage or openings for discharging material from its lower portion, an annular die, pulverizing rollers, and a cover having screened openings above said die and feed-elevating devices below said die, which are adapted to project the pulverized material towards said openings, substantially as described."

We have here a combination of the following elements: (1) Two-part casing, with annular passage; (2) annular die; (3) pulverizing rolls; (4) cover; (5) screens above the die; (6) feed-elevating devices below the die.

The novelty of each of these claims resides in the combination rather than in any single element, and the question of infringement turns upon whether there is found in the defendants' mill the same combination. If the claims are limited to substantially the elevating devices disclosed in the patent, it is apparent there is no infringement. The defendants' mill has lugs or stirrers located on the bottoms of the rolls, while the elevating devices described in the patent are "inclines or shoes" attached to the frame of the mill, which are thus referred to in the specification:

"The elevating inclines or shoes, h', pass through inclined slots formed in said flange, and are attached to the latter by wedges fitted into lugs having wedged-shaped recesses, or said inclines or shoes may be bolted or otherwise removably secured to said flange."

The complainant seeks to sustain infringement by insisting that the claims should receive a broad construction; that they should be construed to cover any elevating device below the die which operates in any degree to project the material towards the screened openings; that this liberal construction is warranted by reference to the specification, which says, when speaking of the operation of the mill, "it [the material] then falls downward towards or upon the elevating inclines or shoes, h', and by them or by other lifting means is driven upwardly and outwardly against the screens in the screened frames, c." I find myself unable to give such a broad construction to these claims for the following reasons: (1) The mill described in the patent was unsuccessful; (2) the combinations covered by

these claims never went into practical use; (3) the Griffin commercial mill does not employ these inclines or shoes for elevating the material, but stirrers on the bottom of the roll; (4) all the elements enumerated in these claims were old in the art, and all are disclosed in the prior Griffin patent No. 351,321, except the two-part casing; (5) a two-part casing, which it is maintained is the novel feature in this combination, is found as early as the Cochran patent, issued in 1854.

The complainant advances the argument that the discharge devices embraced in these claims solved an important problem in the centrifugal mill art. It maintains that, while wet pulverizing mills were practically successful, dry pulverizing mills were unsuccessful by reason of the difficulty of getting the ground material out of the mill, and that these combinations first taught the world how this could be accomplished, and consequently made dry pulverizing mills successful. To state the argument in another way: The problem of the construction and operation of the driving mechanism in a centrifugal mill having been first solved by Huntington by suspending the rolls, and improved by Griffin in his patent of 1889 by adding thereto the positively driven gyrating roll, there was still another problem to solve in the case of a dry pulverizing mill, namely, to devise means for getting the material out of the mill, and that these means were first disclosed in these claims.

I do not think this argument is sound or supported by the record. In the first place, there appears to be little or no distinction in this art between wet and dry pulverizing mills. The same mill is commonly adapted, with slight change, to both forms of pulverizing. The patents in some cases state that the mill is adapted to both wet and dry grinding. Again, this record abundantly shows that some form of stirrers, or agitators, or scrapers, or elevating devices was common to almost every patented crushing mill for the past 40 or 50 years, and also that such mills were provided with passages or channels of various forms through which the material was discharged, and this applies to centrifugal grinding mills as distinguished from other kinds of grinding mills.

I do not find that the failure of any of the unsuccessful Griffin mills, or of any of the patented mills in evidence, arose from the difficulty of devising adequate means for discharging the material, but was due to other causes. There are many minor inventions enumerated in the patents for these mills which are the subject-matter of numerous claims. These inventions relate to details of construction, such as the form of the casing or pan, the die, the feed, the cover, the screened openings, the fan, the stirrers or elevating devices, and other subordinate matters. While the construction of these parts varies in different mills, they were all known and a part of the art before 1888, when the patent under consideration was applied for. It does not follow from this that there may not be patentable novelty in the combinations covered by the claims in issue, but it does follow that such combinations are not entitled to the broad construction they might receive if they were radically new, and solved for the first time an important problem.

Including the two patents in suit, J. K. Griffin and his son, E. C. Griffin, took out eight patents for pulverizing mills between 1886 and 1894. Two of these patents were issued to J. K. Griffin, five to E. C. Griffin, and one to both jointly. One of these patents is for the Griffin commercial mill, which has gone into extensive use. The suit at bar is not brought upon the patent for this mill. The other Griffin mills proved unsuccessful.

The really difficult problem presented in a pulverizing mill is the construction and operation of the driving mechanism. It is here that difficulties like friction and gravity have to be met and overcome. It is upon this, the main feature of the mill, that the thoughts and efforts of inventors have been chiefly centered. It is this which has called for the exercise of the inventive faculty, and which constitutes the principal invention embodied in the various Griffin patents and other patents in evidence. The other inventions concern the minor features of the mill, and are of a subordinate character.

In the old construction of centrifugal mills, the rolls came in contact with, and operated against, the bottom of the die. This arrangement proved unsatisfactory. The centrifugal force was neutralized by the friction of the rolls against the bottom of the pan, and the rolls soon wore out. These defects were overcome by Huntington, who conceived the idea of suspending the rolls above the pan. In the Huntington mill, which was patented May 8, 1883, suspended rolls operated against an annular die by centrifugal force. Afterwards, J. K. Griffin conceived the idea of a positively driven roll, and this he effected by the application of power direct to the roll shaft, whereby a single roll is caused to rotate positively against the die. In this manner Griffin utilized, in a crushing mill, both centrifugal force and rotary momentum.

In view of the prior art, I must hold that claims 13, 14, and 15 of the Griffin patent, No. 410,757, if valid, are limited to substantially the devices described in the specification, and therefore to the "inclines or shoes" attached to the frame of the mill, and that the defendants' mill does not infringe these claims when in place of such "inclines or shoes" it uses stirrers on the bottoms of the rolls.

Claim 5 of patent No. 515,673, the other patent in suit, is as follows:

"In a pulverizing mill, the combination with a pan or chamber and an annular die of pulverizing rolls suspended and driven above the bottom of said pan or chamber, and provided with stirrers upon their bottoms, substantially as shown and described."

The elements in this claim which call for consideration are (1) rolls suspended and driven above the bottom of the pan, and (2) stirrers upon the bottoms of the rolls. The defendants' mill is a centrifugal grinding mill of the Huntington type, and the driving mechanism is different from that described in the Griffin patent. It has, however, stirrers upon the bottoms of the rolls, though differing somewhat in form from those of the patent. Assuming this claim covers all forms of driving mechanism in the centrifugal type of mill in combination with stirrers on the bottoms of the rolls, it is clear the defendants' mill is an infringement. Assuming the claim is limited to the kind of driving mechanism described in the patent, it is clear there is no infringement. The question of infringement,

therefore, turns upon the construction which should be given to the claim.

If stirrers upon the bottoms of the rolls of a centrifugal grinding mill had been disclosed for the first time in this patent, I should be inclined to construe the claim broadly, and to hold that the defendants' mill infringes, although it contains a different form of driving mechanism. But such is not the fact. The application for this patent was filed March 31, 1891. On August 20, 1889, patent No. 409,579 was granted to J. K. Griffin, which embodies substantially the Griffin commercial mill, and which describes stirrers on the bottom of the roll. The specification says: "To the bottom of the roll are attached the stirrers, 17', which may be made of steel, chilled iron, or other hard material;" and in claims 8, 9, and 10 of the patent these stirrers are made an element of the combinations. Another patent, No. 449,118, for an improvement on the patent last mentioned, granted to E. C. Griffin, March 31, 1891, upon an application dated October 29, 1890, also describes stirrers on the bottom of the roll. Patent No. 452,782, granted to J. K. Griffin, May 26, 1891, upon an application filed October 20, 1890, also contains stirrers on the bottom of the roll.

If this were all the evidence, it is manifest that claim 5 of the patent in suit, if valid, must be limited to stirrers on the bottoms of the rolls in combination with the special driving mechanism described in the patent. The complainant seeks to meet this difficulty by the testimony of both the Griffins, who swear that they made the invention covered by claim 5 in the summer of 1888, thus carrying back the invention to a date prior to the three patents above referred to. This testimony is supplemented by the introduction in evidence of an application for a patent filed February 18, 1889, by J. K. Griffin, and afterwards withdrawn. In this application the third claim is identically the same as the fifth claim of the patent in issue. The Griffins explain the withdrawal of this application by testifying that it was subsequently found, upon going carefully over the matter, that they were joint inventors of the mill covered by this application; that in consequence the application was withdrawn, and the subsequent application for the patent in issue was filed March 31, 1891, in which they appear as joint inventors. The withdrawn application and the specification of the patent subsequently granted are substantially the same, except that the patent contains certain additional matter.

It is important to note that the Griffins do not say that, in the summer of 1888, they invented stirrers upon the bottoms of the rolls in a centrifugal grinding mill. What they say is that they made the invention referred to in the fifth claim of the patent in suit at that time. On this point J. K. Griffin's testimony is as follows:

"Q. Please state when you and your son made the invention referred to in the fifth claim of this patent in suit, 515,673. A. In the summer of 1888, I think, about that time."

E. C. Griffin testifies:

"Q. When did you and your father make the invention pointed out by this fifth claim of patent in suit 515,673? A. Some time in the year 1888; I think about the middle or latter part of the summer."

The Griffins at that time were at work upon the mill embraced in patent No. 515,673, which is first described in the 1889 application. Assuming the truth of the testimony of both the Griffins, it would seem that what they invented in the summer of 1888 was the application of stirrers to the bottoms of the rolls in the mill which they invented at that time. The theory that the Griffins at that time invented the application of stirrers to centrifugal mills, whatever the form of the driving mechanism, is inconsistent with their own evidence, and is inconsistent with the subsequent Griffin patents, which contain such stirrers.

The natural and consistent conclusion from the evidence and the various Griffin patents is as follows: In the summer of 1888 the Griffins invented a mill with stirrers attached to the bottoms of the rolls. This mill was subsequently patented, February 27, 1894, and is one of the patents now in suit, No. 515,673. Subsequently, J. K. Griffin invented another mill, with stirrers on the bottom of the roll, for which he was granted patent No. 409,579. On March 31, 1891, E. C. Griffin was granted patent No. 449,118, for another mill, which was an improvement on the mill last mentioned, with stirrers on the bottom of the roll. On May 26, 1891, J. K. Griffin was granted patent No. 452,782 for still another mill which he had invented, and which contained stirrers on the bottom of the roll. In the light of this history of the Griffin inventions and patents, the combination covered by claim 5 of the patent in suit must be limited to the form of driving mechanism described in the specification, and the defendants' mill does not infringe this claim by the use of stirrers on the bottoms of the rolls, combined with the driving mechanism of the old Huntington mill. The conclusion reached by the court renders it unnecessary to pass upon the defendants' petition, filed after the case was heard, to reopen the case on the ground of newly-discovered evidence.

Bill to be dismissed, with costs.