### HAMMOND v. BENZER CORPORATION.

(District Court, E. D. New York. February 7, 1924.)

1. **Patents** ⊛=328—No. 1,283,164, for wind shield for automobiles, held valid, but not infringed.

The Hammond patent, No. 1,283,164, for a wind shield for automobiles, including a transparent glass plate having a portion of the surface silvered to provide a reflecting surface adapted to act as a mirror, *held* valid, but, as limited by the proceedings in the Patent Office, not infringed.

2. **Patents** ⊛=167(1)—Language of claim should be given ordinary meaning; "wind shield."

The term "wind shield," used in a patent claim relating to automobiles, must be construed in its ordinary sense as meaning the glass between the two front standards or posts, and does not include wind deflectors placed outside of such standards.

⊛=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Patents ⚖=260—Nonuse may affect scope of patent.**

While use of a patented device is not necessary to support the patentee's rights, its nonuse may have significance in respect to the scope of the patent, where the alleged infringing device has had great commercial success.

In Equity. Suit by William P. Hammond against the Benzer Corporation. Decree for defendant, dismissing complaint.

Edmund Quincy Moses, of New York City, for plaintiff.
Henry J. Lucke, of New York City, for defendant.

CAMPBELL, District Judge. This is an action in equity, brought by the plaintiff to restrain the alleged infringement by the defendant of the single claim of patent No. 1,283,164, issued by the United States Patent Office to the plaintiff, and dated October 29, 1918, and for damages. The defendant has interposed the twofold defense of invalidity and noninfringement.

[1] The single claim of the patent in suit reads as follows:

"A wind shield for automobiles, including a transparent glass plate having a portion of the surface thereof silvered to provide a reflecting surface adapted to act as a mirror."

The plaintiff described his invention in the patent in suit as follows:

"The present invention relates to a combined wind shield and mirror for automobiles and like vehicles, and has for its object to provide a novel means for combining the wind shield and mirror in a single construction, thereby eliminating the expense and inconvenience incident to the use of a mirror as a separate and independent attachment. A further object of the invention is to provide a mirrored wind shield, which can be manufactured at substantially the same cost as an ordinary wind shield, which can be used both as a wind shield and a mirror, and which is susceptible of adjustment in the usual manner."

He also used the following language in speaking of where the silvered or mirrored surface might be located:

"It will be obvious that the silvered or mirrored surface may be of any desired size or shape, and may be situated at the most advantageous point upon the wind shield, according to the make of the car and the personal ideas of the user. The silvered surface 5 may be protected by any suitable backing 6, and the wind shield section C, can be tilted to any desired angle, so as to set the mirrored surface thereof at the proper inclination."

The defendant offered in evidence a number of patents to show the prior state of the art:

United States patent No. 182,566, issued to Carl A. Demling, dated September 26, 1876, for improvement in window mirrors, discloses window mirrors connected to a sliding sleeve by a ball and socket joint, so as to make them adjustable in any desired direction with facility and convenience.

United States patent No. 167,585, issued to John Stephenson, dated September 7, 1875, for improvement in street cars, discloses the combining of a mirror with the front hood of a car.

United States patent No. 584,078, issued to Andrew Jensen, dated June 8, 1897, for looking glass, discloses window mirrors adapted to

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

be secured outside of a window, so that a person within the room can see reflected in the mirrors the street and front door of the house.

United States patent No. 660,941, issued to George Charles Zang, dated October 30, 1900, for deflector for locomotive engine cabs, discloses a projecting deflector of glass or other transparent material free from any frame or inclosure at the outer edges, mounted on the side of the cab of a locomotive, in front of the window opening therein, to protect the eyes of the engineer from the rush of air and from flying dust and cinders, while at the same time leaving his view ahead unobstructed.

United States patent No. 282,623, issued to Daniel Frost and Henry Cartwright, dated August 7, 1883, for reflecting mirror attachment for locomotives, discloses mirrors to be affixed at both sides of a locomotive cab, so that the engineer can see the rear end of the train and objects in the rear thereof, without interfering with his view in front of the train.

United States patent No. 718,309, issued to Harold P. Brown, dated January 13, 1903, for reflector attachment for vehicles, discloses a reflector which will reveal to the eye of the motorman, when standing in his position to manipulate the car, the movement of the passengers getting on and off at the rear.

United States patent, No. 886,273, issued to John J. Tanzey, dated April 28, 1908, for suction device for securing glasses in place, discloses a device for causing either the adherence of a transparent glass plate or a mirror to any object to which it is desired to apply the same.

United States patent No. 881,771, issued to Henri Cain, dated March 10, 1908, for mirror for motor vehicles, discloses a mirror which may be attached to the vehicle as therein described, so as not to interfere in any way with free entrance and exit from the vehicle, and also will not interfere with a ready inspection of the road behind the vehicle by the driver or other occupant of the car.

An examination of these patents shows that there was nothing new in merely silvering glass or attaching a mirror to enable one driving a vehicle to see what was occurring at the rear or behind the vehicle, and also that wind deflectors as separate articles were known to the art long before the patent in suit was issued.

There was also offered in evidence the file wrapper of the plaintiff's patent in suit, from which it appears that the application was filed July 19, 1913, and that more than five years elapsed before the patent was issued, and then only after appeal and hearing before the Examiners in Chief.

Four claims were contained in the application as filed, and two additional claims were added by amendment on July 22, 1913. All of the claims were rejected by the Examiner on November 5, 1913, and the patent to Cain, No. 881,771, supra, was cited. On October 30, 1914, the applicant by amendment substituted four new claims, and on November 20, 1914, the Examiner rejected all of these claims. On November 15, 1915, the applicant sought a reconsideration as to claims 2, 3, and 4, and on November 20, 1915, these claims on reconsideration were finally rejected.

On November 6, 1916, the applicant appealed to the Examiners in Chief from the final rejection of his claims. On March 23, 1917, the Examiners in Chief affirmed the decision of the Examiner, and in their decision said as follows:

"The patent to Cain discloses the idea of a tilting mirror clamped to the side posts of what is equivalent in the vehicle illustrated to the side posts of an ordinary wind shield. We consider it obvious that a mirror for the intended purpose might be clamped on the top of the frame as well as at the sides, if the operator were willing to accept the possible obstruction of his forward vision, and in view of such devices as that disclosed in Tanzey, No. 886,273, April 28, 1908, which has been called to our attention through its citation in other cases, we do not think it would be unobvious to support the mirror on the glass instead of clamping it to the frame. Nor is the extension of the mirror across the full width of the wind shield anything more than a matter of judgment in determining what width of field of vision would be desirable. In view of these considerations, we do not consider the rejected claims allowable. We would be willing, however, to recommend the allowance of the original claim 3, if it were represented, but do not consider anything broader than that allowable. The decision of the Examiner is affirmed."

The original claim 3 was thereafter allowed and the patent issued. The patent as issued was closely limited by the decision of the Examiners in Chief, and nothing which was rejected can now be claimed by the plaintiff. Van Epps v. United Box Board & Paper Co. (C. C.) 137 Fed. 418. It thus appears that plaintiff's patent relates only to a transparent glass plate wind shield, having a portion of the surface thereof silvered to provide a reflecting surface adapted to act as a mirror.

This was the understanding of the defendant, because the chief argument made by his attorney to obtain the issuance of the patent was the invention displayed by the plaintiff in placing the silvering on the surface of the wind shield, and thus saving the driver from the necessity of bending to obtain a view in the rear, which was required in the use of mirrors which were affixed by attachment at the side beyond the nearest side of the wind shield. In my opinion the plaintiff added little to the art by his invention, because it has been shown to have but little practical value; but I am not unmindful of the fact that the granting of the patent creates a presumption in its favor, and while the several elements of the combination found in the plaintiff's patent in suit are all old, there appears no direct anticipation in the prior art of the patent in suit, and therefore I believe it is valid, but the single claim thereof should be strictly limited.

Much has been said by plaintiff about the wind deflectors being wind shields, but I find that they have not been so termed in the trade or the trade papers, and that, while both have to do with protecting from the wind, they perform different functions. The term "wind shield" has always been associated with that which directly shields or protects one from the wind, in automobiles the glass in front between the two standards, while the term "wind deflector," on the other hand, has been associated with that which causes the wind to deflect or pass by, and in automobiles is usually attached at the side and beyond the main protection from the wind. The word "deflector" is not newly coined, because we find it used in describing a projecting glass mounted

on the side of the cab of a locomotive in front of the window opening therein. See patent to Zang, No. 660,941, issued in 1900, supra.

[2] The claim of the patent in suit should be construed in accordance with the ordinary and usual meaning of the terms of the claim, and "wind shield" should be held to mean the glass between the two front standards or posts. Keystone Bridge Co. v. Phoenix Iron Co., 95 U. S. 274, at page 278, 24 L. Ed. 344; Dey Time Register Co. v. Syracuse Time-Recorder Co., 161 Fed. 111, at page 112, 88 C. C. A. 275. The defendant in my judgment does not use the first element of the plaintiff's combination, the wind shield, on which to locate its rear view mirror.

The location of the rear vision mirrors generally used on automobiles before the product of the defendant was first put on the market was substantially that of the mirror in the rear view wind deflectors of the defendant's structure, and the value of locating the mirror on the wind deflector was not taught to the defendant by plaintiff's invention, because plaintiff's attorney, in order to obtain the issue of the patent by the Patent Office, claimed that the chief invention of the plaintiff's patent was the placing of the silvering on the wind shield, and thus saving the driver from the necessity of bending to obtain a view in the rear. In the use of the defendant's structure this invention is not found, because by reason of the location of the mirror in the wind deflector, which is attached to the standard outside of the wind shield, the driver is not saved from the necessity of bending to obtain a view in the rear.

The place where the rear view mirror is located in defendant's structure was discovered by Louis Benzer and Harry Benzer as the result of an accident, which happened to a stranger who sought to install a plain side wind deflector on the standard or post of an automobile on which was also clamped an ordinary rear view mirror.

The defendant does not silver any portion of the surface of the wind deflector, but one face thereon is concavely ground therethrough, and thereafter silvered and protected from the weather. The silvered portion affords a convex reflecting surface to the driver and provides the mirrorscope effect. The defendant does not, in my opinion, have a portion of the surface of the wind deflector silvered to provide a reflecting surface adapted to act as a mirror.

The only element common to the patent of the plaintiff and the structure of the defendant is a transparent glass plate, and such plates were known to the art long before the filing of the application of the plaintiff for the patent in suit. The defendant has not appropriated anything that belongs to the plaintiff, but has developed its product wholly on its own initiative and wholly by its own effort. The mirrorscope effect in the defendant's structure is produced in a way that is old and well known to the art, and was used in glass for decorative purposes long before plaintiff's application was filed, of which the Benzers, as workers in that line, were well informed.

[3] There has been no manufacturing under the plaintiff's patent, and, while this is not necessary in order to support the plaintiff's rights thereunder, it does in the instant case have significance in respect

to the scope of the claim of the patent in suit. Westinghouse E. & Mfg. Co. v. Toledo, P. C. & L. Ry. Co., 172 Fed. 371, 97 C. C. A. 69; National Malleable Castings Co. v. Buckeye M. I. & C. Co., 171 Fed. 847, 96 C. C. A. 515.

The claim of the patent in suit will not read upon the defendant's structure. The defendant's structure is of great practical value and represents a great advance in the art. It has met with success because of its own inherent excellence, and not because of anything which was taught by the plaintiff's patent in suit.

The defendant's structure is a great commercial success and has added much to the art, while the plaintiff's patent in suit has added little, if anything, substantial to the art, and it would be unfair to compel the defendant to pay tribute to the plaintiff, even if the language of the claim was broad enough to include the successful structure. Lovell v. Seybold Machine Co., 169 Fed. 288, at page 290, 94 C. C. A. 578. The defendant does not employ the structure of the claim of the plaintiff's patent in suit, and accordingly does not infringe any of the plaintiff's rights. Motion Picture Patents Co. v. Universal Film Manufacturing Co. et al., 243 U. S. 510, 37 Sup. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959.

Defendant has not copied in its structure the structure of the patent in suit, but is manufacturing under a patent granted to it by the United States Patent Office. The defendant does not infringe the claim of the plaintiff's patent in suit.

A decree may be entered in favor of the defendant, dismissing the plaintiff's complaint, with costs.