## CHAPMAN DEHYDRATER CO. v. CRENSHAW.

### No. 7015.

Circuit Court of Appeals, Ninth Circuit.

May 8, 1933.

Percy S. Webster, of Stockton, Cal., for appellant and cross-appellee Chapman Dehydrater Co.

Chas. E. Townsend and Wm. A. Loftus, both of San Francisco, Cal. (A. Donham Owen, of San Francisco, Cal., of counsel), for appellee and cross-appellant Crenshaw.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

WILBUR, Circuit Judge.

Appellant and cross-appellee brought a suit for the alleged infringement of patent No. 1,464,338, issued on August 7, 1923, to R. L. Puccinelli, which will be hereinafter referred to as the "Puccinelli patent," principally utilized for the drying of fruit. The appellee and cross-appellant denied the infringement, and asserted that claims 1 and 2 of the aforementioned patent were invalid, pleaded that a number of prior patents and uses anticipated the same, and filed a cross-complaint charging the plaintiff with an infringement of patent No. 1,461,224, issued July 10, 1923, to J. W. Pearson, and subsequently transferred to defendant Crenshaw, which will be hereinafter referred to as the "Pearson patent," for a drying apparatus also principally used for the drying of fruit.

The appellant and cross-appellee replied to the counterclaim averring that claim 11 of the Pearson patent was invalid because anticipated by prior patents. The Puccinelli patent consists of two parallel chambers or tunnels, disposed side by side and of equal length and cross-section area, one being the furnace chamber which contains the apparatus for conditioning the air, and the other the drying tunnel. Drying trays containing the fruit to be dried are stacked on trucks which are run into and through the drying tunnel on rails extending from end to end of the tunnel, in the meantime being subjected to the action of heated air coming from the furnace chamber for a sufficient length of time to dry the fruit. Neither the height, width, nor length of the tunnels or chambers is specified in the patent, but in the plants constructed by the appellant at Modesto and Los Gatos, called double dehydrators, there are two drying chambers, each of which is 54 feet long, 6 feet 3 inches wide, and 7 feet 1⅞ inches high, and a furnace chamber of the same length and height and 8 feet 9 inches wide. We will refer hereinafter to this triple chamber device in considering the validity of the Puccinelli patent.

The terse opinion of the trial court may be epitomized by the following quotations therefrom:

"I am unable to see that Puccinelli [patent No. 1,464,338] has done anything that merits the name of invention * * *. Referring now to the defense and its counterclaim, I would say that I am of the opinion that the Pearson patent [No. 1,461,224] * * * contributed no more to the art than did Puccinelli. I give both patents the benefit of the doubt as to their validity. I am also of the opinion that neither patent infringes the other.

"The Court finds, first, that the Puccinelli patent is valid; second, that the Pearson patent is valid; third, that there is no infringement of either patent."

In the previous action for the infringe-

ment of the Puccinelli patent (No. 1,464,338) brought by the Chapman Dehydrater Company (the appellant and cross-appellee herein) against Fred F. Knipschild, the same trial judge in a more extended opinion sustained the validity of the Puccinelli patent. In the course of this opinion he expressed his conclusion with reference to that patent as follows: "During the trial of the case and during the argument of counsel I have endeavored to see just exactly what it is that Puccinelli claims he invented and I must confess that I have been unsuccessful. It is true that he has a device which is successful, a device which has been sold throughout the state to fruit growers. It is also true that he has obtained a patent upon his device but he is not a pioneer in any sense of the word. I therefore have serious doubt that he invented anything. I have in mind, however, the rule that the doubt should be resolved in favor of the patentee and I am, therefore, constrained to find that the patent is a valid one and I so find."

Before further discussing the two patents here involved and the dehydrating plants manufactured by the respective patentees, it should be stated that the appellant at the opening of the trial of this case in the District Court called attention to the previous opinion of the same trial judge (supra), in which doubt was expressed as to the validity of the Puccinelli patent, and stated: "The patent, as we conceded at Sacramento, must necessarily be construed in a very limited way. We are not claiming, and cannot claim, any broad basic claims. The claims on which we rely are and must be extremely limited; but it is our contention that the limitations which we find in the claim and which are not present in the prior art are those which define invention, * * *. We want to establish independent validity here by convincing your Honor that the structure does show an inventive step, though small, we admit, over the prior art references."

It will perhaps assist in understanding appellant's claim as to this narrow inventive step if we quote the testimony of the expert offered by the appellants, George J. Henry. Our quotation is largely for the purpose of emphasizing the fact that the alleged invention is claimed to consist largely in the idea of having two parallel chambers side by side through which the air circulates in horizontal planes, one chamber containing the heating element and the other the product to be dehydrated, said chambers being of substantially the same volume, that is, the same length and the same cross-section. This witness, aft-

er stating his qualifications as a patent attorney and patent expert, testified, in part, as follows:

"The Puccinelli patent discloses to me a step new in the dehydrater art; that step is the furnace chamber of Puccinelli. * * * The furnace chamber of Puccinelli is entirely different from any prior furnace chamber. *It is a long tunnel, substantially the cross sectional area, and substantially the length of the dehydration tunnel;* it is therefore a chamber in which the air moving relatively slowly has plenty of time to contact with and take up the heat units from the furnace, itself, or from the heat means. * * * That furnace chamber, as he shows and describes it, distinguishes from other furnace chambers in the prior art which are usually made separate and connected by ducts with the dehydration chamber, which are of small area. * * * Puccinelli extends his furnace, as I say, through substantially the length of his furnace chamber, and thus accomplishes a distribution of heat to the moving air more efficiently than the prior art. * * * The perfect equalization which I speak of is acquired by a very large furnace or *I ascribe the entire virtue of equalization to the cross section, the length, and the presence and dimensions of the heating means.* * * * Puccinelli added very substantially to the art when he secured an entry of dehydration fluid or conditioned air to the dehydration tunnel, a superior mixture, a more harmonized and equal mixture of air, so that every part of it was the same as regards its humidity and temperature, and velocity, over the prior art. *He did that by the cross section of this tunnel being of substantially the same, or relatively large, so that your air velocity would be slow.* * * * He says distinctly a furnace chamber, and that furnace chamber is one of a *pair of chambers.* The other one of the pair is the tunnel. [Witness referring to claim 1, Puccinelli patent]. The implication of the claim is very clear, that the furnace chamber is substantially the same as the dehydrating tunnel. When you take the reading of the specifications and the drawing *I say it is imperative that he have a furnace chamber of substantially the proportions and dimensions of the dehydrating tunnel.*" (Italics ours.)

Claim 1 of the Puccinelli patent, referred to by the witness, which is here involved, is as follows: "A dehydrater comprising a housing having *a pair of parallel compartments* formed therein, *disposed side by side,* and separated by a partition wall, one compartment forming a furnace chamber and the other a dehydrating tunnel, communicating

passages formed in the housing between each end of the dehydrating tunnel and furnace chamber, respectively, air circulating means, and air heating means disposed in the furnace chamber."

It will be observed that the above-mentioned witness called by the appellant claims that the invention disclosed by the Puccinelli patent lies in the fact that, by the proposed system, having two chambers of equal volume, the air circulating through the two would become thoroughly mixed in the heating chamber. This is partly due to the fact that the velocity in each chamber would be substantially the same because the cross-section area and length of each chamber is the same. In this connection it is interesting to observe that in the apparatus patented by W. M. Grosvenor for drying, covered by letters patent issued May 11, 1915, No. 1,138,751, the drawings show two parallel chambers of equal volume, length, and cross-section, one containing the apparatus for conditioning the air, and the other containing the products such as glue, gelatine, or the like, to be dried at a relatively low temperature. The apparatus in the chamber for conditioning the air consists of a refrigerating system for condensing the moisture in the humid air coming from the drying chamber, and also radiators for heating the air after it has been thus cooled and dried. This chamber also contains a fan for forcing the air through these two apparatuses and into and through the drying chamber, thence returning it to the air-conditioning chamber. Claim 13 of this patent is in part as follows: "13. The combination of a chamber composed of two passages *having substantially the same equivalent section* in one of which material to be dried may be placed, means whereby the material may be inserted at one end of the chamber and removed from the other end thereof, * * * connecting means to the other passage, *refrigerating means and heating means in this passage,*" etc.

The drawings show that the word "passage" in this claim is the equivalent of the word "tunnel" in the Puccinelli patent. It will be observed that, so far as the area of the conditioning chamber and drying chambers are concerned, the earlier patent (Grosvenor) is much more definite and specific as to their being equal or equivalent than is the patent in suit wherein the relative dimensions of the two chambers must be adduced by inference from the drawings and specifications of the patent, as stated by the above witness. In the Grosvenor patent the conditioning

chamber is above and parallel to the drying chamber instead of alongside and parallel. This anticipation of parallel chambers was recognized by Puccinelli by the amendment of claim 1 by the insertion of the phrase, "disposed side by side," to avoid a conflict with the Grosvenor patent. In the apparatus for drying glue, etc., designed and patented by Hoeveler April 24, 1883, patent No. 276,405, we have a horizontal circulation of the air through two parallel chambers of equal dimensions side by side, the air being forced through the two chambers by a blower. The air-conditioning apparatus, however, is differently disposed at the end of the drying chambers. One chamber at one end contains apparatus for cooling the air and condensing the moisture. At the same end the other chamber contains the heating apparatus consisting of steam coils. The air is blown through the heating apparatus by a fan, and passes through the two drying alleys or chambers, thence through the cooling apparatus to the fan, and again to the heating apparatus. In the specification of the Hoeveler patent it is stated that the length of the alley or chamber is 90 feet. Claim 2 of that patent is as follows: "2. In a drying apparatus adapted to the continuous movement of its contained air, the combination of *two twin alleys intercommunicating at the ends only,* and adapted to receive the material to be dried, an air-forcing apparatus at one end of one alley, and a surface-condenser at the same end of the other alley, substantially as described."

In the specifications in the Hoeveler patent it is stated that the parallel chambers, if desired, may be placed one above the other instead of alongside. If we combine the idea of Hoeveler of two parallel chambers of equal dimensions side by side with the cooling apparatus at the end of one and the heating apparatus at the end of the other, both chambers being used for dehydrating, with the Grosvenor patent, we would have two parallel chambers side by side with the air-conditioning apparatus in one chamber and the dehydrating chamber alongside. Consequently, if the witness George J. Henry, called by the appellant, is correct in interpreting appellant's patent, the patent is clearly anticipated by these earlier patents, with the single exception of the dimensions of the heating means. This is manifest if we repeat his statement, above quoted, "I ascribe the entire virtue of equalization to the cross section, the length, *and the presence and dimensions of the heating means.*" We think it clear that there could be no patent upon the dimensions

of the heating units contained in the air conditioning chamber, and an examination of the claims of the Puccinelli patents shows that no claim is made therefor.

Claim 2 of the Puccinelli patent, which is also relied upon by the appellant, is substantially the same as claim 1, except that it incorporates provisions with reference to the dampers for the admission and circulation of the air. As the appellant conceded at the opening of the trial that the invention, if any, would be found in claim 1, it is unnecessary to consider the question of dampers, counsel then stated: "Claim 1 is our broadest claim and will probably determine our invention, if it is found to be present." The damper arrangement is not considered important by the appellant in presenting its claim for adjudication. In its brief it is said: "Briefly the invention or new step in the art defined in Claims 1 and 2 of the patent is comprised within the particularly described furnace chamber in its relation to the dehydrating tunnel and the presence therein of the furnace and flues constituting the heating means. * * * The new invention disclosed in plaintiff's patent is the particularly defined combination and *relative arrangement of drying tunnel and furnace chamber— which per se extend alongside each other for their full length and have substantially equal cross section areas*—together with the presence in the furnace chamber of the furnace and heating elements extending substantially from one end thereof to the other and without any complications or excrescences disposed therein. No prior art patent or use discloses this specific arrangement of a pair of connecting tunnels and heating elements, making one of them a furnace chamber; nor is there any equivalent structure disclosed in such prior art. * * * *"

■ In connection with the teachings of this patent, it is significant that the structure referred to above actually manufactured by the appellant and the alleged infringing dehydrating plant constructed by the appellee and cross-appellant each contained three tunnels parallel and side by side. The middle tunnel contains the heating apparatus, the air is forced through the middle or heating tunnel, divides at the end of the heating tunnel, part going into one of the two side tunnels in which the fruit to be dried is placed, and the other part into the other drying tunnel, reuniting at the other end of the heating tunnel to repeat the circuit. Appellant and cross-appellee argues that this three-tunnel structure constructed by both parties is the

equivalent of two pairs of chambers described in the patent, that is to say, that the apparatus used was merely a combination of two of the units covered by the patent. If the furnace chamber was twice the size of the dehydrating chamber and divided in the middle by a partition, this would be true. However, in the above-mentioned devices constructed by the appellant at Modesto and Los Gatos the width of the furnace chamber, instead of being twice that of the drying chamber, is only slightly larger than one of the drying chambers. Each drying chamber is 6 feet 3 inches wide, which would require, under the teaching of the Puccinelli patent, a furnace chamber for the two 12 feet 6 inches wide, while the ones constructed were 3 feet 9 inches less in width. The device of the appellee and cross-appellant departs even further from the teaching of the patent that the heating chamber and the dehydrating chambers should have the same area in cross-section, for in the appellee's device the width of each drying chamber is about 4 to the width of 4½ for the furnace chamber, which should under the teaching of the patent be 8 instead of 4½. Although in a patent as narrow as those involved in the case at bar, where emphasis is placed upon the equal volume of the dehydrating chamber and the furnace chamber, it cannot be maintained that a structure having a furnace chamber of only about half the volume would infringe the patent. We have referred to the most recent dehydrating plants constructed by the parties merely for the purposes of indicating that, if the patentee ever believed that there was any virtue in the patent claim with reference to the equal size of the dehydrating and furnace chambers, the owner of the Puccinelli patent has abandoned that construction, and the appellee and cross-appellant has not undertaken to use the idea. We conclude that claims 1 and 2 of the Puccinelli patent are not new or novel, do not constitute invention, and are anticipated by the prior patents hereinbefore referred to.

■ The appellee and cross-appellant admitted upon the argument, and we think properly, that the claim No. 11 in the Pearson patent relied upon by him is invalid, for the same reason that claims 1 and 2 of the Puccinelli patent are invalid.

The case is remanded, with instructions to the trial court to modify the decree by adjudging claims 1 and 2 of the Puccinelli patent void and adjudging claim 11 of the Pearson patent void, and requiring each party to pay its own costs.