Circuit Court of Appeals, Sixth Circuit.
June 30, 1936.

### REINHARTS, Inc., v. CATERPILLAR TRACTOR CO.
No. 7636.

Circuit Court of Appeals, Ninth Circuit.
Sept. 8, 1936.

George L. Wilkinson and Charles L. Byron, both of Chicago, Ill., Percy S. Webster, of Stockton, Cal., and Thatcher & Woodburn, of Reno, Nevada, for appellant.

Charles M. Fryer and Alfred C. Aurich, both of San Francisco, Cal., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a decree which held that five patents owned by appellee were, as to the claims in suit, valid and infringed by appellant, enjoined appellant from further infringing them, and referred the case to a master for an accounting and for the assessment of damages.

The patents in question are Turnbull, No. 1,304,416; Holt, No. 1,314,651; Wickersham, No. 1,356,679; Whitacre, No. 1,-744,516; and Norelius, No. 1,317,653. The Turnbull, Holt, Wickersham, and Whitacre patents are for improvements in tractors. The Norelius patent is for an improvement in trailer wagons. The infringement charged was the sale by appellant of two tractors, one being a wheel tractor and the other a

track-type tractor, both of which were manufactured by International Harvester Company of New Jersey. Appellant admitted having made these sales, but defended on the grounds that, as to the claims in suit, appellee's patents were invalid, and that, if the patents were valid, the tractors which appellant sold did not infringe them.

Grounds of invalidity pleaded in appellant's answer were: (1) Want of invention; (2) anticipation, or lack of novelty; and (3) failure to "particularly point out and distinctly claim" the patented improvements, as required by section 4888 of the Revised Statutes, as amended (35 U.S.C.A. § 33). Appellant, at the close of the evidence, submitted its proposed findings of fact and conclusions of law, wherein the court was requested to hold all the patents invalid for want of invention and to hold the Norelius patent, but none of the others, invalid for noncompliance with section 4888 of the Revised Statutes. There was no request to hold any of the patents invalid for lack of novelty. Thus the defense of anticipation was abandoned, and the defense of noncompliance with section 4888 was limited to the Norelius patent.

■ Appellant's brief states: "The validity of the claims at issue of plaintiff's [appellee's] patents depends upon whether the structures they define, when compared with the prior art structures, result from the exercise of invention or merely from mechanical skill of those versed in the art." The question thus presented is one of fact. Thomson Spot Welder Co. v. Ford Motor Co., 265 U.S. 445, 446, 44 S.Ct. 533, 68 L. Ed. 1098; Stoody Co. v. Mills Alloys (C.C. A.9) 67 F.(2d) 807, 812; Schumacher v. Buttonlath Mfg. Co. (C.C.A.9) 292 F. 522, 533.

■ Having been regularly issued, appellee's patents were presumptively valid, and the burden of establishing their invalidity rested on appellant. Radio Corporation of America v. Radio Engineering Laboratories, 293 U.S. 1, 7, 55 S.Ct. 928, 79 L.Ed. 163; Morgan v. Daniels, 153 U.S. 120, 123, 14 S.Ct. 772, 38 L.Ed. 657; Cantrell v. Wallick, 117 U.S. 689, 695, 6 S.Ct. 970, 29 L.Ed. 1017; Coffin v. Ogden, 18 Wall. 120, 124, 21 L.Ed. 821; Stoody Co. v. Mills Alloys, supra; Banker's Utilities Co. v. Pacific National Bank (C.C.A.9) 18 F.(2d) 16, 18; Chester N. Weaver, Inc., v. American Chain Co. (C.C.A.9) 9 F.(2d) 372,

380; Schumacher v. Buttonlath Mfg. Co., supra; Wilson & Willard Mfg. Co. v. Bole (C.C.A.9) 227 F. 607, 609.

■ The question of infringement also is a question of fact. Stilz v. United States, 269 U.S. 144, 147, 46 S.Ct. 37, 70 L.Ed. 202; United States v. Societe Anonyme des Anciens Etablissements Cail, 224 U.S. 309, 322, 32 S.Ct. 479, 56 L.Ed. 778; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 312, 29 S.Ct. 495, 53 L.Ed. 805; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 422, 28 S.Ct. 748, 52 L.Ed. 1122.

■ On both questions—the question of validity and the question of infringement— the trial judge, who personally heard the evidence and personally inspected the accused tractors, decided against appellant. His findings, unless clearly wrong, should not be disturbed. Adamson v. Gilliland, 242 U.S. 350, 353, 37 S.Ct. 169, 61 L.Ed. 356; Diamond Patent Co. v. Webster Bros. (C.C.A.9) 249 F. 155, 158; Central California Canneries Co. v. Dunkley Co. (C.C. A.9) 247 F. 790, 794. See, also, Collins v. Finley (C.C.A.9) 65 F.(2d) 625, 626; Easton v. Brant (C.C.A.9) 19 F.(2d) 857, 859.

The trial court found, as a fact, that the combination defined in each of the claims in suit was a substantial and meritorious advance over anything found in the prior art, and constituted subject-matter which required inventive genius to produce. Accordingly, the trial court concluded, as a matter of law, that, as to each of the claims in suit, all the above-mentioned patents were valid. As to the Turnbull, Holt, Wickersham, and Whitacre patents, the trial court's finding is well supported by the evidence and is, we think, clearly correct. The supporting evidence consists of the patents themselves, with their specifications and drawings, working models of the patented structures[1] and the testimony of experts familiar with the prior art, from all of which it appears that the improvements disclosed by Turnbull, Holt, Wickersham, and Whitacre required the exercise of the faculty of invention, and were not the mere product of mechanical skill. We conclude, therefore, that in holding these patents valid, the trial court did not err.

The question next to be considered is whether the Turnbull, Holt, Wickersham and Whitacre patents were infringed.

---

[1] These are hereinafter separately described.

The Turnbull patent was applied for on May 25, 1918, and was issued on May 20, 1919. As stated in the specification: "This invention relates to tractors ...... and has for its object to simplify and improve the manufacture and assembly of the machine, and particularly to render the transmission mechanism readily accessible."

The specification contains a detailed description, accompanied by drawings, exemplifying one form which the invention may assume. From these it appears that, except for an axle and a drive shaft, all parts of the transmission mechanism, including a change speed gear set and a power shaft for a belt pulley, are carried entirely by the cover of the transmission housing. This cover is fitted detachably upon the lower portion of the housing and is bolted tightly thereon, so that the housing is entirely closed. When it is desired to remove the transmission mechanism, the cover is taken off, bringing with it the gear set and associated parts, without disturbing the lower portion of the housing, which forms an indispensable part of the main frame. Aside from the advantage of accessibility, this manner of mounting the gears on the cover provides a further advantage, in that the lower half of the transmission housing does not have to be machined to the extent that would be necessary if the bearings for the various shafts of the transmission mechanism were formed thereon. Also with the transmission parts so arranged, it becomes much easier to assemble the machine.

Claims 1, 2, 5, and 6 of the Turnbull patent are in suit.[2] Each claim defines a combination one element of which is a cover for a transmission housing so constructed and arranged that it carries and supports a change speed gear set; or, in other words, a change speed gear set the support for which forms the closure for a transmission housing.

Appellant contends that no such element is contained in either of the accused tractors. This contention is not borne out by the evidence. Included in the evidence are photographs and working models of the accused tractors and the testimony of experts as to whether these tractors contain this and other elements of the patented combinations. In addition, the trial judge had before him the accused tractors themselves and saw them dismantled and reassembled. Appellant attempts to differentiate between the patented and the accused structures by applying the term "cage" to that which the patentee calls a "cover." The evidence shows that the "cage" referred to by appellant is, in fact, a cover for a transmission housing, and that it carries and supports a change speed gear set. Appellee's "cover" and appellant's "cage" perform substantially the same function in substantially the same way to obtain substantially the same result. That they are called by different names is immaterial. Bates v. Coe, 98 U.S. 31, 42, 25 L.Ed. 68.

The trial court found that both the accused tractors contain each of the elements of the several combinations defined in claims 1, 2, and 6 of the Turnbull patent, and that the accused wheel tractor contains each of the elements of the combination defined in claim 5 thereof. This finding is amply supported by the evidence. There was, therefore, no error in holding these claims infringed by the tractors in which the combinations defined by them are, respectively, contained.

[2] Claim 1 reads: "In a self-propelled vehicle, a main frame, a transmission mechanism carried thereby, a housing for the transmission mechanism, the lower portion of which forms an integral part of the main frame, a detachable cover for said housing, and a change speed gear set forming part of the transmission mechanism within said housing, carried by the cover and removable therewith."

Claim 2 combines with the elements mentioned in claim 1 "a power shaft carried also upon said cover within the casing, and means for operatively connecting said power shaft with the transmission mechanism."

Claim 5 reads: "In a self-propelled vehicle, a main frame forming a part of the lower portion of a gear housing, final driving gears for rear wheels on the vehicle journaled in the lower portion of said housing, a detachable cover for the casing, and a transmission mechanism carried on said cover for transmitting power from said transmission to drive the driving gears."

Claim 6 reads: "In a self-propelled vehicle, the combination of a one-piece cast metal frame having formed integrally therewith the lower part of a transmission housing, and a detachable cover for said transmission housing with a variable speed gear transmission mechanism carried on the cover, and removable therewith as a unit."

632

■ The Holt patent was applied for on September 5, 1917, and was issued on September 2, 1919. It is for a traction attachment which may be substituted for the ordinary round wheels of an auto truck or other wheeled vehicle. The attachment comprises a rear driving axle and a self-laying track propelling mechanism operatively connected to the axle at each end thereof. This mechanism includes a rear driving sprocket wheel, a front guide wheel, a track chain trained about said wheels, a roller truck mechanism operating upon the ground stretch of the chain and supporting the axle, and a jointed carrying frame for the sprocket and guide wheels. The jointed carrying frame is in two sections, constituting, in effect, two frames, pivotally connected to each other. The rear section carries the sprocket wheel and. is called the supporting frame. The front section, which carries the guide wheel, has, journaled in it, rollers operating on the ground stretch of the chain, and is called the rocking truck frame.

. The pivotal connection between the two sections of the jointed carrying frame enables the front section, or rocking truck frame, to swing up and down about its pivotal point. Thus, when obstructions or inequalities are encountered in the ground traversed, the front section moves up and down, independently of the main frame of the vehicle and independently of the rear section of the jointed carrying frame, so that a minimum up-and-down movement is transmitted to the vehicle, thereby enabling it to accommodate itself to such inequalities with minimum disadvantage. The upward movement of the rocking truck frame causes the guide wheel to approach the sprocket wheel and decreases the distance between their axes. This produces slack in the track chain and prevents its breaking when obstructions fall on the track or become lodged between the track chain and the wheels.

Of this patent, claims 4, 5, 6, and 7 are here involved.[3] Appellant assumes, erroneously, that the phrase "auto tractor," in these Holt claims, refers only to an auto truck which, by means of the patented attachment, has been converted into an auto tractor. This assumption is based on the language of the specification, which states that the inventor's object is "to provide a simple, practical self-laying track substitute for the ordinary round wheels of an auto truck or other wheeled vehicle to which the invention may be applicable." Appellant thereupon argues that the claims must be construed as covering but one use. of the patented attachment, namely the conversion of a truck into a tractor, and that, since the accused tractor[4] never was a truck, and has never been anything but a tractor, it does not infringe the Holt patent.

■ The claims cannot be so limited. Although, as the specification indicates, the patented attachment was intended to be used in converting trucks into tractors, such intended use does not measure the patentee's right. He did not limit his invention to that particular use. He may, therefore, claim every use to which ·it may be applied, irrespective of whether he had it in mind when he made the invention. Western Electric Co. v. La Rue, 139 U.S. 601, 606, 11 S.Ct. 670, 35 L.Ed. 294; Deitel v. La Minuette Trading Co. (C.C.A.2) 37 F.(2d) 41, 42; Dwight & Lloyd Sintering Co. v. Greenawalt (C.C.A.2) 27 F.(2d) 823, 828.

---

[3] All the elements of claims 4 and 5 are embraced in claim 6, which reads as follows: "In an auto tractor, a rear driving axle and self-laying track propelling mechanism operatively connected to the axle at each end thereof, said propelling mechanism including a rear driving wheel and a front guide wheel for the track chain, roller truck mechanism operating upon the ground stretch of the chain and supporting the axle, and a jointed carrying frame for said sprocket and guide wheels mounted upon the axle permitting movement of said wheels toward and from each other, the section of the frame carrying the driving wheel being fixed relatively to the axle and the section carrying the guide wheel being movable with respect thereto."

Claim 7 reads: "In an auto tractor, a rear driving axle and self-laying track propelling mechanism operatively connected to the axle at each end thereof, said propelling mechanism including a driving sprocket wheel for the track chain, a supporting frame for said sprocket wheel carried upon the axle and extending rearwardly therefrom, a rocking truck frame pivotally connected to the supporting frame for the sprocket wheel, and a front guide wheel for the track chain journaled upon said truck frame, and supporting rollers journaled in the truck frame and operating upon the ground stretch of the track chain."

[4] The accused tractor now and hereafter referred to is the track-type tractor sold by appellant.

Each of the Holt claims in suit defines a combination one element of which is "a rear driving axle." Appellant assumes that this means "the usual driving axle of a motor truck," and thereupon argues that, since the accused tractor is not and never was a motor truck, it cannot be said to contain the rear driving axle specified in these claims. The assumption on which this argument is predicated is baseless. Other claims of the Holt patent, not here involved, define combinations which include, as an element thereof, the usual driving axle of a motor truck or other wheeled vehicle. In those claims, that element is called "the usual axle," or "the ordinary axle," of the vehicle. The combinations in suit do not contain that element, but contain a different element, namely, "a rear driving axle." These combinations are not to be limited by writing into them an element contained in combinations not in suit. Los Angeles Art Organ Co. v. Æolian Co. (C.C.A.9) 143 F. 880, 885.

It appears from the evidence that the accused tractor contains the rear driving axle specified in the Holt claims in suit. Appellant calls its rear driving axle a "power distribution shaft," thereby attempting to differentiate it from the rear driving axle found in the patented attachment, but the evidence shows that appellee's "axle" and appellant's "shaft" are substantially identical. They perform substantially the same function in substantially the same way and accomplish substantially the same result. Calling them by different names does not destroy their identity. Bates v. Coe, supra.

Other elements of the Holt combinations are: (1) A self-laying track propelling mechanism "operatively connected to the axle at each end thereof"; (2) a roller truck mechanism "supporting the axle"; and (3) a jointed carrying frame "mounted upon the axle." The assertion that these elements are not found in the accused tractor is based on the assumption that the axle

referred to in the Holt claims in suit is the usual driving axle of a motor truck, an assumption heretofore shown to be erroneous. That these and all other elements of the Holt combinations in suit are contained in the accused tractor is clearly established by the evidence. In holding that the Holt claims in suit were infringed by appellant, the trial court did not err.

The Wickersham patent was applied for on January 18, 1918, and was issued on October 26, 1920. It is for a track-type tractor. Claims 17 and 21 thereof are in suit.[5] Both combinations are embodied in a construction described and illustrated in the specification and the accompanying drawing. In this construction there is a central body member, including a combined engine and transmission case. At each side thereof is a self-laying track mechanism, including an endless chain, a self-laying track, and roller trucks within the track. The track mechanisms support the central body member and are secured thereto by means of (1) an equalizing bar, consisting of a semi-elliptical spring, extending from one track mechanism to the other and providing a central pivotal support for the front end of the body member; and (2) stub axles, or outriggers, supporting the rear end of the body member and supported by the rear ends of the roller truck frames, which, in turn, pivot on the stub axles, or outriggers. These pivotal connections permit the self-laying track mechanisms to move up and down independently of each other when traveling over uneven ground, so that a minimum rocking or twisting movement is transmitted to the combined engine and transmission case. Also, in this type of construction, the weight of the tractor is transmitted directly to the track mechanisms and is kept off the sprocket shaft. Other advantages, shown by the evidence, we deem it unnecessary to recite.

Appellant contends that the tractor described in the Wickersham specification

5 Claim 17 reads: "A tractor comprising a motor, a pair of self-laying track mechanisms, means to secure said mechanisms to the motor, said means including stub axles to support one end of the motor upon the track mechanisms, and an equalizer spring extending from one track mechanism to the other and provided with a central pivotal support for the front end of the motor."

Claim 21 reads: "In a traction engine, the combination of a pair of endless, self- laying tracks laying side by side and spaced from each other, roller trucks within the self-laying tracks, load supporting means bearing upon the trucks and comprising a combined engine and transmission case with the forward end of the same supported by an equalizing bar on the forward ends of the trucks, and outriggers at the rear end of the transmission case bearing on the rear end of the trucks and on which outriggers the trucks pivot."

634

is a "frameless" tractor, and that the accused tractor is not of that type and, therefore, cannot be said to infringe the Wickersham patent. This contention must fail. Wickersham's invention is defined, not by the specification, but by the claims of his patent. Smith v. Snow, 294 U.S. 1, 11, 55 S.Ct. 279, 79 L.Ed. 721; Altoona Publix Theatres v. American Tri-Ergon Corporation, 294 U.S. 477, 487, 55 S.Ct. 455, 79 L.Ed. 1005; Continental Paper Bag Co. v. Eastern Paper Bag Co., supra, 210 U.S. 405, at page 419, 28 S.Ct. 748, 52 L.Ed. 1122. There is in the claims no mention of a "frameless" tractor. That expression is merely appellant's characterization of a tractor having, instead of the usual frame, a central body member comprising a combined engine and transmission case, as described above. Furthermore, it appears from the evidence that appellant's tractor has, instead of the usual frame, a central body member substantially identical with that described in the Wickersham specification. Hence, if Wickersham's is a "frameless" tractor, so also is the tractor sold by appellant.

One element of the combination defined in claim 17 of the Wickersham patent is an equalizer spring. The corresponding element of the combination defined in claim 21 is an equalizing bar. Appellant admits that the accused tractor has an equalizing bar, but says that this is a rigid bar and not a spring, and that, therefore, the accused tractor does not infringe claim 17. There is no merit in this contention. Any bar which is elastic, or springy, is a spring. Appellant's bar is made of steel, which, of course, has some elasticity. Hence, though said to be rigid, appellant's bar is, nevertheless, in some degree, a spring. Moreover, it appears from the evidence, including that of appellant's own expert, that, as

to function, mode of operation and result accomplished, appellant's bar and appellee's spring are substantially identical.

Appellant asserts that the equalizing bar of the accused tractor does not support the front end of the motor or the forward end of the combined engine and transmission case, that the accused tractor has no stub axles or outriggers, and that it, therefore, does not infringe the Wickersham patent. These assertions are disproved by the evidence, including that of appellant's own expert. The trial court's finding that all the elements of each combination defined by the Wickersham claims in suit are contained in the accused tractor is amply supported by the evidence. There was, therefore, no error in holding these claims infringed.

█ The Whitacre patent was applied for on September 16, 1925, and was issued on January 21, 1930. It is for an improvement in "crawler," or track-type, tractors. As stated in the specification, the invention may be briefly summarized as "consisting in certain novel details of construction, and combinations and arrangements of parts."

Claims 5, 26, 27, 28, 29, 30, 31, and 36 of this patent are in suit.[6] The combinations they define are embodied in a construction described in the specification. It comprises a power plant, a pair of track frames and endless tracks and a pair of driving units. The power plant comprises an engine and transmission mechanism, in a combined engine and transmission case, constituting the central body member, or main frame, of the tractor. The track frames [7] have, mounted in them, trucks, or rollers, operating on the ground stretch of the endless tracks. These tracks are trained about rear driving sprockets and front guide wheels, as in the Holt construction

<hr>

6 Claim 5 reads: "In a tractor, a power plant, a pair of driving units including housings secured to opposite sides of the rear portion of the power plant and driving elements therein, a pair of pivoted track frames and endless tracks on opposite sides of the power plant, rear driving sprockets for said tracks connected to said driving units, a pair of rigid crossmembers secured to said housings one in advance of the other and a draw-bar having a support on the rear cross-member and attached to the forward cross-member."

Claim 26 reads: "In a tractor, a power plant, track frames and endless tracks on opposite sides of the power plant, hous-

ings secured to opposite sides of the power plant, shafts extending inwardly from the housings to the power plant, shafts extending outwardly from the housings for driving the endless tracks, and power transmitting means between said shafts, the housings having weight supporting connections with the track frames independent of said shafts."

The combinations defined in claims 5 and 26 include every element as to which any question is raised on this appeal.

7 Such frames are sometimes called "roller frames," or "truck frames," or, as in the Holt patent, "rocking truck frames."

heretofore described. The driving units include housings secured to opposite sides of the rear portion of the power plant, held rigidly together by two cross-members and connected pivotally to the track frames; drive shafts extending inwardly from the housings to the power plant; sprocket shafts extending outwardly from the housings; driving sprockets mounted on the sprocket shafts; and driving elements, within the housings, transmitting power from the drive shafts to the sprocket shafts. There is also a draw-bar attached to the front cross-member and supported, for sliding movement, on the rear cross-member.

The front end of the power plant is supported centrally on the front cross-member, the ends of which rest on the track frames. Through this cross-member and the pivotal connections between the track frames and the housings, the track frames receive and carry the entire weight of the power plant. The employment of cross-members to connect the front and rear portions of the housings provides a rigid trussed structure capable of withstanding the stresses and strains incidental to the up-and-down movement of the track frames. The front cross-member provides an anchorage for the drawbar, so that the pull of the load is on the cross-member and not on the power plant.

Each of the claims in suit calls for "a power plant." Appellant contends that this means, and can only mean, the power plant of a Fordson tractor, and that, since the accused tractor does not contain a Fordson power plant, it cannot be said to infringe the Whitacre patent. There is no merit in this contention. It is true that, in the construction described in the specification, as exemplifying one form of Whitacre's invention, a Fordson power plant is used, but the inventor does not limit his invention to that particular construction or mode of use. On the contrary, his specification states: "While I have shown the preferred construction, which answers the requirements very effectively, I do not desire to be confined to the precise details either of construction or arrangement, or mode of application, but aim in my claims to cover all modifications which do not involve a departure from the spirit and scope of the invention as set forth in the appended claims."

The claims do not so much as mention a Fordson power plant. Much less do they make it an essential element of Whit-

acre's invention. The limitation contended for by appellant is not found in the claims and will not be read into them. That the accused tractor has a power plant is not and cannot be denied. Whether this is a Fordson power plant, or a power plant of some other make or type, is immaterial.

The accused tractor contains driving units, including housings, cross-members, drive shafts, sprocket shafts, driving sprockets and driving elements, as hereinabove described; but appellant argues that, since the power plant to which these driving units are secured is not a Fordson power plant, they are not such units as are specified in the claims in suit. This argument is based on the false assumption that the power plant specified in these claims is, and can only be, a Fordson power plant. The assumption being false, the argument based on it must be and is rejected. The trial court rightly found that the accused tractor contains each element of the several combinations in suit, and that the sale thereof by appellant constituted an infringement of the Whitacre patent.

Appellant contends that, since each of the patents in suit is for a mere improvement, the claims thereof "must be strictly limited to substantially the identical construction described in the specification." That is not the law. It is the claims of a patent, not its specifications, which measure the invention. Smith v. Snow, supra; Altoona Publix Theatres v. American Tri-Ergon Corp., supra; Continental Paper Bag Co. v. Eastern Paper Bag Co., supra.

Decisions cited by appellant [Broadway Towel Supply Co. v. Brown-Meyer Co. (C.C.A.9) 245 F. 659, 661; Pacific States Electric Co. v. Wright (C.C.A.9) 277 F. 756, 758; Pray v. Copes (C.C.A.9) 1 F.(2d) 927, 928; Dunkley Co. v. Central California Canneries (C.C.A.9) 7 F.(2d) 972, 975; Thomas Day Co. v. Doble Laboratories (C.C.A.9) 42 F.(2d) 6, 8; and Magnavox Co. v. Hart & Reno (C.C.A.9) 73 F.(2d) 433, 435] do not support its contention. They hold merely that, in the case of a combination patent for an improvement, where all the elements of the combination are old in the art, the patent should be limited to the specific combinations defined by the claims. They do not hold that such a patent should be limited to substantially the identical construction described in the specification. Indeed, one of the decisions cited (Thomas Day Co. v. Doble Laboratories, supra) expressly recognizes and declares

that, in such a case, "the monopoly granted by the patent is not to be limited to the identical devices exhibited in the drawings or prescribed in the specifications."

It is true that, in construing the claims of a patent, a greater degree of liberality and a wider range of equivalents are permitted where the patent is of a primary character than when the invention is simply an improvement (Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 406, 25 S.Ct. 697, 49 L.Ed. 1100), but it is not true that only primary patents are entitled to invoke the doctrine of equivalents. Continental Paper Bag Co. v. Eastern Paper Bag Co., supra, 210 U.S. 405, at page 415, 28 S.Ct. 748, 52 L.Ed. 1122. A patent for a meritorious improvement in an old art is entitled to liberal treatment. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 67 L.Ed. 523. The Turnbull, Holt, Wickersham and Whitacre inventions, though not basic or primary, are substantial and important and are, therefore entitled to a fair range of equivalents. Stebler v. Riverside Heights Orange Growers' Ass'n (C.C.A.9) 205 F. 735, 740.

Appellant says that the inventions covered by the Turnbull, Holt, Wickersham and Whitacre patents are "not in practical use." Therefore, appellant contends, these are "mere paper patents", and each of them "must be strictly limited to the structure as specifically described in its specifications and drawings". This contention must fail, because, in the first place, the evidence does not show that these inventions are not in practical use. The evidence does show that, at the time of the trial below, appellee was not manufacturing or selling tractors embodying all the combinations covered by these patents, but it does not show that appellee's licensees were not then manufacturing or selling such tractors, or that the tractors then being manufactured and sold by appellee did not embody any of these combinations. It appears from the evidence that tractors embodying some of the Turnbull, Holt, Wickersham and Whitacre combinations have been extensively manufactured, sold and used by appellee, its predecessors in title and their licensees. There is nothing to show that such manufacture, sale or use has been discontinued.

Furthermore, appellant's proposition—that these patents, if not in practical use at the time of the trial, must be strictly limited to the structure specifically disclosed in their specifications and drawings—cannot be sustained. The authorities cited by appellant [8] do not lay down any such rule. They merely hold that long-continued nonuse of a patented invention may have a bearing on the construction to be given the patent, and that the courts, in construing such a patent, are not disposed to give it a broader scope than is clearly required. They do not hold that such a patent must be strictly limited to the specific structure disclosed in its specifications and drawings. Much less do they hold that a patent must be so limited, merely because of non-use at the time of the trial. A patented invention, whether used or unused, is measured, not by the specifications and drawings, but by the claims of the patent. See authorities heretofore cited.

The Norelius patent was applied for on September 30, 1914, and was issued on September 30, 1919. It is for an improvement in trailer wagons. The specification states: "One important object of this invention is to provide an interchangeable self-laying track attachment for ordinary wagons, whereby, when desired, the usual round wheels may be taken off the wagon and the self-laying track attachment applied without any change being made in the vehicle."

The question here is whether the improvement which the inventor claims as his invention has been particularly pointed out and distinctly claimed, as required by section 4888 of the Revised Statutes, as amended [9] (35 U.S.C.A. § 33).

[8] Deering v. Winona Harvester Works, 155 U.S. 286, 295, 15 S.Ct. 118, 39 L.Ed. 153; Henry v. Los Angeles (C.C.A. 9) 255 F. 769, 780; Cocks v. Rip Van Winkle Wall Bed Co. (C.C.A. 9) 28 F.(2d) 921, 922; Rown v. Brake Testing Equipment Corporation (C.C.A. 9) 38 F.(2d) 220, 223; Chapman Dehydrater Co. v. Crenshaw (C.C.A. 9) 65 F.(2d) 69, 72; National Malleable Castings Co. v. Buckeye Malleable Iron & Coupler Co. (C.C. A. 6) 171 F. 847, 853; Reece Shoe Machinery Co. v. United Shoe Machinery Co. (C.C.A. 3) 244 F. 446, 456; Hammond v. Benzer Corporation (D.C.E.D.N. Y.) 295 F. 908, 912; Toledo Scale Co. v. Barnes Scale Co. (D.C.E.D.Mich.) 18 F. (2d) 965, 966.

[9] Section 4888 provides: "Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to

Claim 5 of this patent is the only one in suit. It reads: "An endless, flexible, self-laying track member for vehicles and the like comprising a frame, guide wheels located at either end thereof, rollers located thereon on either side thereof, an endless, flexible, self-laying track chain riding upon said wheels and supporting said rollers and means for *displacing the axes of the wheels with respect to the wheel* to tighten the chain, said means comprising a bell-crank yoke pivoted at one end on the frame, *bearings for the rollers located at their fulcrum* and adjustable means *intermediate the other end of the frame* to rock the yoke about its pivotal point." (Italics supplied.)

The italicized portions of this claim are meaningless. Without them, the claim is ambiguous, vague, indefinite, and uncertain. With them, it is unintelligible. With or without them, it fails to "particularly point out and distinctly claim" the improvement which the inventor claims as his invention. Because of such failure, it must be held invalid. In re Incandescent Lamp Patent, 159 U.S. 465, 474, 16 S.Ct. 75, 40 L.Ed. 221.

To save the claim here in question, the trial court construed the phrase, "displacing the axes of the wheels with respect to *the wheel*," to read, "displacing the axes of the wheels with respect to *each other*," and construed the phrase, "bearings for the *rollers* located at *their* fulcrum," to read, "bearings for the *wheels* located at *the* fulcrum." (Italics supplied.) Such constructions are, we think, unwarranted and improper. It is true that, in construing the claims of a patent, mere clerical and typographical errors may be disregarded. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 442, 47 S.Ct. 136, 71 L.Ed. 335; Herman v. Youngstown Car Mfg. Co. (C.C.A.6) 191 F. 579, 584. But the decree in this case goes further than that. It attempts, not merely to correct a clerical or typographical error, but to rewrite the claim and thus enlarge the patent beyond the scope of that which the inventor claimed and the Patent Office al-lowed. This the courts have no right to do. McClain v. Ortmayer, 141 U.S. 419, 424, 12 S.Ct. 76, 35 L.Ed. 800; Keystone Bridge Co. v. Phoenix Iron Co., 95 U.S. 274, 278, 24 L.Ed. 344; Merrill v. Yeomans, 94 U.S. 568, 573, 24 L.Ed. 235.

The decree must be and is so modified as to hold claim 5 of the Norelius patent, No. 1,317,653, invalid and, therefore, not infringed.

As thus modified, the decree is affirmed.

---

the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, con-struct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."